UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-51-GWU

WILMA WILLIAMS,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB). The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities? If not, a
        finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine
        whether the claimant's severe impairment(s) or combination of
        impairments meets or equals in severity an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.	At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.	If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In the Sixth Circuit, the Step Two severity regulation has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  Essentially, the severity requirements may be used to weed out claims that are "totally groundless."  Id., n.1.

**DISCUSSION**

The plaintiff, Wilma Williams, filed her application for DIB alleging disability beginning May 16, 2004 due to depression, anxiety and hypertension.  (Tr. 82, 91). After her application was denied at the initial and reconsideration levels, she requested and received a hearing before an Administrative Law Judge (ALJ).

The ALJ determined that Mrs. Williams had medically determinable impairments of mild obesity, hypertension, depression, and anxiety.  (Tr. 11). However, he found that the impairments, whether considered singly or in combination, were not "severe" under the Commissioner's regulations.  (Id.). Accordingly, he terminated the sequential evaluation at Step Two, and concluded that the plaintiff was not disabled.

The plaintiff alleges that the ALJ improperly evaluated her mental impairments. No argument is made regarding the lack of a "severe" physical impairment.

Mrs. Williams received the medications Paxil and Klonopin from her family physician Dr. George Chaney (e.g., Tr. 168, 197, 209), but he did not suggest any functional restrictions.

Mrs. Williams sought treatment at Kentucky River Comprehensive Care Center (KRCC), an outpatient mental health clinic, beginning in August, 2007. She reported to her counselor that things had not been right since she lost her mother in February, 2005, and she was also having marital conflicts. (Tr. 172). She felt she needed to get a job but could not concentrate. She was given diagnoses of depression and a generalized anxiety disorder, with a Global Assessment of Functioning (GAF) score of 75, by a registered nurse practitioner. (Tr. 206). A GAF score of 75 represents mild symptoms or some difficulty in social, occupational or school functioning "but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34.[1]

---

[1]It does not appear that any medically acceptable source at KRCC under 20 C.F.R. § 404.1513 offered a diagnosis.

Dr. Greg V. Lynch, a psychologist, conducted a consultative examination of Mrs. Williams on October 3, 2007.  (Tr. 173).  She reported that she was a high school graduate, and had attempted to work as a motel housekeeper earlier in the year, but had quit after four days "due to distress."  (Tr. 174).  She felt that her three visits with a counselor at KRCC had not been helpful.  She described poor sleep and poor ability to complete chores due to pain, but did yard work every few weeks and shopped weekly.  (Tr. 174-5).  Dr. Lynch found that the plaintiff had normal attention, concentration, memory and recall, but her affect was restricted and her mood was depressed, with her thought process being notable for paranoia and suspiciousness. (Tr. 175).  Her primary stressors were her mother's death in 2005 and her own illness.  Her coping abilities were overwhelmed and her social support was deficient.  Dr. Lynch listed his impression as a major depressive disorder, single episode, moderate to severe, with a GAF score of 53 (Tr. 176), representing moderate symptoms.  DSM-IV-TR, p. 34.  He opined that, while the plaintiff would have only "slight" limitations in her ability to understand, remember, and carry out instructions and sustain attention and concentration towards the performance of simple, repetitive tasks, she would be "moderately" limited in her ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervision, co-workers, and work pressures in a work setting.  (Tr. 176-7).

State agency psychologist Jane Brake reviewed the record on October 24, 2007 and opined that the plaintiff did not have a "severe" impairment.  (Tr. 178).  She noted that Mrs. Williams had had stress due to marital problems, had "completed the [consultative examination] adequately," and that she remained able to function independently.  (Tr. 190).  She added: "The examining opinion is given great weight insofar as it is consistent with a non-severe finding."  (Id.).  Ed Ross, another state agency reviewer, agreed with Dr. Brake's "non-severe" finding (Tr. 213), and added that additional evidence from KRCC including the GAF of 75 was consistent with this conclusion (Tr. 225).

Subsequent KRCC office notes from 2008 and 2009 show that the plaintiff was complaining of increased depression, partly due to situational factors, but there is no indication of a change in treatment or of functional restrictions.

The ALJ stated that he accepted the opinion of Drs. Brake and Ross that the plaintiff's impairments were less than "severe" because it was consistent with the evidence as a whole and there was no evidence to the contrary.  (Tr. 14).

The plaintiff notes on appeal that the ALJ's summary of Dr. Lynch's report omitted any mention of the "moderate" limitations on her ability to tolerate stress and pressure and to respond appropriately to supervision, co-workers, and work pressures in a work setting.  (Tr. 12).  In addition to the fact that he was the only examining mental health professional to offer an opinion, the plaintiff argues that

reliance on the state agency examiners was misplaced because they overlooked or ignored Dr. Lynch's limitations.

The Commissioner concedes that the ALJ made "misstatements," but argues that his decision was not undermined thereby, because the evidence does not show that the plaintiff was under an impairment for twelve consecutive months. The Commissioner argues that the evidence from KRCC, particularly the GAF score of 75, in addition to the failure of KRCC sources to diagnose "recurrent" Major Depressive Disorder, establishes that the plaintiff's condition improved after Dr. Lynch's examination.

The evidence from KRCC is not quite so clear cut. The counselor's notes from 2008 and 2009 contain several indications of increased depression. (E.g., Tr. 252-3, 259). Even assuming that the GAF of 75, which was given by a nurse-practitioner who is not considered an acceptable medical source under 20 C.F.R. § 404.1513(d), is sufficient to outweigh the opinion of an acceptable medical source such as Dr. Lynch, the timing was actually before Dr. Lynch's interview. The KRCC report is dated September 15, 2007, whereas Dr. Lynch's report is based on an October 3, 2007 interview. (Tr. 173, 206).

The ALJ stated repeatedly that there was "no medical evidence of record that demonstrates the claimant would have limitations in her ability to perform basic work-related activities." (Tr. 13-14). Absent this oversight, the ALJ might have

interpreted the subsequent evidence from KRCC differently.  It is simply too speculative to conclude that he would not have done so.  Thus, the error was not harmless.

In addition, the court notes that Social Security Ruling (SSR) 85-15 has some bearing on the case.  It provides in pertinent part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.
>
> *****
>
> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work.  These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.  However, persons with this large job base may be found disabled because of adversities in age, education, and work experience.
>
> SSR 85-15, at *4.

The ruling proceeds to give as an example a person of advanced age (55 or more), with a limited education, and no relevant work experience.  With more than a non-severe mental impairment, the individual "will generally be found disabled." Id.  at *5.

In the present case, although the plaintiff is a high school graduate, she did turn 55 years old during the proceedings below.  (Tr. 36).  The court is not suggesting that SSR 85-15 mandates a finding of disability, but if she is found to have a severe mental impairment, her adversity in age suggests that the use of the Medical-Vocational Guidelines would be inappropriate.   These considerations reinforce the court's conclusion that a finding of "harmless error" would be inappropriate.

The decision will be remanded for further consideration.

This the 6th day of October, 2010.

Signed By:

*G. Wix Unthank*

United States Senior Judge